IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DAVID MICHAEL GAILBREATH, | ) | |
|---|---|---|
| Plaintiff | ) | Civil Action No. 10-228 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge McLaughlin |
| WARDEN BRIAN COVERT, et al., | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that Defendants' motion to dismiss/motion for summary judgment [ECF No. 11] be granted.

**II.    REPORT**

**A.    Relevant Procedural History**

Plaintiff David Michael Gailbreath, an inmate formerly incarcerated at the Lawrence County Prison[1] ("LCP"), initiated this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, on September 16, 2010. He subsequently filed an amended complaint on December 6, 2010, which expands upon the allegations of the original complaint and is the operative pleading in this case. [ECF No. 7]. Named as Defendants are Brian Covert, Warden at LCP ("Covert"), and Marge Datillo, Paralegal at LCP ("Datillo").

---

[1] Plaintiff is presently incarcerated at the State Correctional Institution at Albion, Pennsylvania. (See ECF No. 10).

In his amended complaint, Plaintiff claims that Defendants violated his rights under the first, fifth, and fourteenth amendments to the United States Constitution, as well as his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"). In particular, Plaintiff alleges the following:

> 5.1 Between August 2007 and July 2008, and again in March 2010, [Plaintiff] was denied various legal materials and access to the law library....
>
> 5.2 Between August 2007 and July 2008, and again in March 2010, Plaintiff was denied access to outdoor recreation for the entire period of time noted.
>
> 5.3 Between August 2007 and July 2008, and again in March 2010, Plaintiff was denied fair disciplinary hearings in which he was arbitrarily denied witnesses in his defense.
>
> 5.4 In March 2010, [Plaintiff] was denied access to his own personal legal materials which prevented him from filing certain legal documents with the court.
>
> 5.5 In March 2010, [Plaintiff] was denied a vegetarian diet that prevented him from practicing his Islamic faith properly.

(ECF No. 7, Amended Complaint, at ¶¶ 5.1-5.5).

On February 1, 2011, Defendants filed a motion to dismiss/motion for summary judgment [ECF No. 11] contending that all of Plaintiff's claims arising from events that allegedly occurred between August 2007 and July 2008, are barred by the applicable two-year statute of limitations, and Plaintiff has otherwise failed to state a claim upon which relief may be granted. Despite having been granted an extension of time to file a response to Defendants' motion, Plaintiff has failed to do so. This matter is now ripe for consideration.

### B. Standards of Review

#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A

complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the *Twombly/Iqbal/Phillips* line of cases, as follows:
> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."

\* \* \*

3

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).

### 2. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56©. The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502

(3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion
#### 1. Statute of Limitations

The federal civil rights laws do not contain a specific statute of limitations for § 1983 actions. However, it is well established that the federal courts must look to the relevant state statute of limitations for personal injury claims. Samerica Corp. Del., Inc. v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1998)(internal citations omitted). Thus, based on Pennsylvania's applicable statute of limitations, a § 1983 claim must be filed no later than two years from the date of the alleged violation. See Urrutia v. Harrisburg County Police Dept., 91 F.3d 451 (3d Cir.(Pa.) 1996). Similarly, pursuant to Pennsylvania's applicable statute of limitations, claims based upon false arrest and false imprisonment must be filed no later than

two years from the date of the alleged incident. See 42 Pa.C.S. § 5524.

In this case, Plaintiff's complaint was received by the Clerk of Courts, along with a motion for leave to proceed *in forma pauperis,* on September 16, 2010. [ECF No. 1]. Thus, any claims raised by Plaintiff arising from events that occurred prior to September 16, 2008, are barred by the applicable statutes of limitations and should be dismissed. This would include all of Plaintiff's claims arising from circumstances that allegedly occurred between August 2007 and July 2008, as this time period falls beyond the reach of the statute of limitations. Accordingly, Plaintiff's claims against Defendants arising from events that allegedly occurred between August 2007 and July 2008 should be dismissed as untimely.

### 2. Access to Legal Materials and Law Library

Plaintiff claims that he was denied various legal materials and access to the law library "which prevented him from filing certain legal documents with the court." (ECF No. 7, Amended Complaint, at ¶¶ 5.1, 5.4).

"It is well settled that prisoners have a constitutional right to access to the courts, which requires access to 'adequate law libraries or adequate assistance from persons trained in the law' for filing challenges to criminal sentences, both direct and collateral, and civil rights actions." Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000), quoting Bounds v. Smith, 430 U.S. 817, 828 (1977).[2] "The standard to be applied is whether the legal resources available to a prisoner will enable him to identify the legal issues he desires to present to the relevant authorities, including the courts, and to make his communications with and presentations to those authorities understood." Abdul-Akbar v. Watson, 4 F.3d 195, 203 (3d Cir. 1993), cert. denied,

---

[2] The right of access to courts may arise in the context of the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection Clause. See Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002).

498 U.S. 806 (1990). "A court's task in applying the teaching of Bounds to any penal institution is not to prescribe the maximum requirements of an optimum library and legal resource facility, but only to determine as best it can, whether the resources provided the minimum that Bounds requires. Id.

Here, Defendants have submitted evidence demonstrating that, upon his request, Plaintiff was given copies of 46 cases, six statutes, various Pennsylvania Rules of Criminal and Appellate Procedures, and multiple sections of The Trial Book for Pennsylvania Lawyers, Pennsylvania Standard Practice, and West's Pennsylvania Practice. The provision of these materials was more than adequate to meet Defendants' constitutional obligations.

Furthermore, it is a well settled principle of law that in order to state a claim for a denial of the right of access to the courts, a plaintiff must show actual injury. Lewis v. Casey, 518 U.S. 343 (1996). In this regard, a plaintiff must allege both an underlying cause of action, whether anticipated or lost, and official acts frustrating the litigation. Christopher v. Harbury, 536 U.S. 403 (2002). Here, Plaintiff has alleged neither.

Accordingly, Plaintiff's denial of access to courts claim should be dismissed.

### 3.     Denial of Outdoor Recreation

Plaintiff claims that he was denied outdoor recreation during the month of March 2010, in violation of his Eighth Amendment right to be free from cruel and unusual punishment.[3]

"There is no question that meaningful recreation 'is extremely important to the psychological an physical well-being of the inmates.'" Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988), quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979). Nonetheless, "although exercise is 'one of the basic human necessities protected by the Eighth

---

[3] Plaintiff also claims that he was denied outdoor recreation between August 2007 and July 2008; however, as discussed earlier, this portion of the claim is barred by the statute of limitations and will not be considered.

Amendment,' LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993), a temporary denial of exercise with no medical effects is not a substantial deprivation." Bank v. Nicklin, 2011 WL 397651 at *7 (M.D.Pa. Feb 2, 2011), citing May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997)(determining that the denial of recreation for twenty-one days was insufficient to sustain an Eighth Amendment claim); Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989)(finding that the denial of recreation for thirteen days does not amount to cruel and unusual punishment); French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985)(pointing out that lack of exercise may rise to a constitutional violation only "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened"). See also Wright, III v. State Correctional Inst. at Greene, 2007 WL 2852527 at *6 (W.D.Pa. Sept. 27, 2007)(holding that Plaintiff's allegation that he was denied outdoor exercise "randomly" over a period of three months on the basis of "inclement weather" was insufficient to state an Eighth Amendment claim, particularly where Plaintiff failed to allege physical harm and failed to "set out at least an approximate number of times he was denied outdoor exercise"); Castro v. Chesney, 1998 WL 767467, at *12 (E.D.Pa. Nov. 3, 1998)(holding that deprivation of exercise for "several days" without evidence of "a tangible physical harm which resulted from the denial of exercise" did not rise to the level of an Eighth Amendment violation).

Here, Plaintiff has merely alleged that he was denied access to outdoor recreation during the month of March 2010. He has not alleged that he was completely denied any exercise during this period of time, nor has he alleged that he suffered any tangible physical or psychological harm as a result of the lack of outdoor recreation. He simply complains that he was denied access to outdoor recreation for one month. This is insufficient to state a claim of cruel and unusual punishment under the Eighth Amendment. Accordingly, Defendants' motion to dismiss this claim should be granted.

### **4.     Denial of Witnesses at Disciplinary Hearings**

Plaintiff claims that he was denied fair disciplinary hearings between August 2007 and July 2008, and in March 2010, because he was "arbitrarily denied witnesses in his defense," in violation of his Fourteenth Amendment due process rights. (ECF No. 7, Amended Complaint, at ¶ 5.3). As discussed earlier, to the extent this claim arises from events that allegedly occurred between August 2007 and July 2008, it is barred by the applicable statute of limitations. Thus, the Court will consider this claim only to the extent it pertains to any hearing(s) that may have occurred during the month of March 2010. In this regard, Defendants have submitted evidence showing that Plaintiff received one disciplinary hearing in March 2010. (See ECF No. 14-8). According to this evidence, an incident report was issued against Plaintiff on March 3, 2010, charging him with "disrespect toward staff" and "disrupting normal operations" after Plaintiff called the issuing officer a "f**king retard." (Id. at p. 2). A disciplinary hearing was held on March 5, 2010, at which Plaintiff was found guilty of the misconduct and was sanctioned to 30 days of disciplinary custody in LCP's restricted housing unit. (Id.).

The Supreme Court has held that a prisoner's state created liberty interest is limited to those situations that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In Sandin, the Supreme Court considered the question of whether segregated confinement implicated a constitutional liberty interest and concluded that "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486. See also Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (placement of a prisoner in administrative custody for a period of 15 months did not impose atypical and significant hardship on prisoner and, thus, did not deprive due process rights). Thus, the fact that Plaintiff was guilty of a misconduct and sanctioned to 30 days of disciplinary custody did not implicate a constitutional liberty interest under the Fourteenth Amendment. It follows, therefore, that the alleged "arbitrary denial of witnesses" at Plaintiff's misconduct

hearing did not violate his due process rights, because Plaintiff did not have a liberty interest to protect. Rivers v. Horn, 2001 WL 312236 at *2 (E.D.Pa. Mar. 29, 2001). Accordingly, Defendants should be granted summary judgment as to Plaintiff's Fourteenth Amendment due process claim arising from the alleged denial of witnesses at his disciplinary hearing.

### 5. Denial of Vegetarian Diet

Plaintiff claims that he was "prevented from practicing his Islamic faith properly" because he was denied a vegetarian diet, in violation of his First Amendment right to freedom of religion and his rights under RLUIPA. (ECF No. 7, Amended Complaint, at ¶ 5.5).

#### a. First Amendment Freedom of Religion

Inmates have a constitutional right to receive a nutritious diet consistent with their religious beliefs. Acoolla v. Angelone, 2006 WL 938731 at * 10 (W.D.Va. 2006), citing Ross v. Blackledge, 477 F.2d 616, 618-19 (4th Cir. 1973); See also Johnson v. Horn, 150 F.3d 276, 283 (3d Cir. 1998)(holding that the First Amendment requires prison officials to provide inmates "with a diet sufficient to sustain them in good health without violating the kosher laws")(citations omitted). However, the right to practice one's religion while in prison is not absolute. See O'Lone v Shabazz, 482 U.S. 342, 348 (1987) (free exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or maintain prison security"); Price v. Johnston, 334 U.S. 266, 285 (1948) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.").

Here, the record indicates that Plaintiff submitted a grievance to Defendant Covert on March 14, 2010 requesting "the vegiterian [sic] and no pork diet that I had at SCI-Forest." (ECF No. 14-12 at p. 1). In support of this request, Plaintiff stated "I am a Muslim, and the no pork diet is a must. I have also been on a vegiterian [sic] diet for nearly two years now due to

11

cholesterol reasons." (Id.). Defendant Covert responded to this grievance by stating "Mr. Gailbreath we will honor your religion – and you will be on a no pork diet. As for a vegetarian diet – that is a personal preference – unless it is ordered specifically by <u>our</u> doctor for <u>medical reasons</u>. (Id. at p. 2). Thus, while Plaintiff was denied a vegetarian diet based upon non-religious reasons, he was provided a pork-free diet in accordance with his religious beliefs as a practicing Muslim. <u>See</u> <u>Williams v Bitner</u>, 455 F.3d 186, 192 n. 6 (3d Cir. 2006), <u>citing</u> <u>Muslim v. Frame</u>, 854 F.Supp. 1215, 1224 (E.D.Pa. 1994); <u>Masjid Muhammad-D.C.C. v. Keve</u>, 479 F.Supp. 1311, 1318 (D.Del. 1979)("District courts in this district have recognized that Muslim inmates are entitled to a pork-free diet"). Accordingly, Plaintiff's First Amendment freedom of religion claim is without merit, and summary judgment should be granted in favor of Defendants as to such claim.

### **b.** **RLUIPA**

"RLUIPA [...] protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 721 (2005). RLUIPA provides, in relevant part, that no prison that receives federal funding shall impose a substantial burden on the religious exercise of a person confined to the prison even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1.

In order to establish a *prima facie* case, a plaintiff must "demonstrate"[4] that his "exercise

---

[4] "Demonstrate" is defined by the statute as "meet[ing] the burdens of going forward with the evidence and or persuasion." 42 U.S.C. § 2000cc-5(2).

of religion"[5] was "substantially burdened." Id. "The burden of proving the existence of a substantial interference with a religious exercise rests on the religious adherent." Baranowski v. Hart, 486 F.3d 112, 124 (5th Cir. 2007). See also Washington v. Klem, 497 F.3d 272, 283 (3d Cir. 2007); 42 U.S.C. 2000cc.

> The Third Circuit Court of Appeals has held that a "substantial burden" lies where:
> 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR
>
> 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

Washington, 497 F.3d at 280 and n7 (capitalization in original) adopting the definition of "substantial burden" enunciated by the Fifth Circuit in Adkins v. Kaspar, 393 F.3d 559 (5th Cir. 2004). See also Heleva v. Kramer, 330 Fed. Appx. 406, 409 (3d Cir. 2009).

Once a plaintiff establishes a *prima facie* case, the burden shifts to the government to demonstrate that "application of the burden" to the plaintiff "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1.

Here, Plaintiff has failed to show that his exercise of religion was substantially burdened by the denial of a vegetarian diet. As discussed above, Defendants honored Plaintiff's request for a pork-free diet in recognition of his Muslim faith. Plaintiff's further request for a vegetarian diet was, in his own words, "for cholesterol reasons," and was not religious in nature. Thus, the denial of the same did not place any substantial burden on Plaintiff's religious exercise.

---

[5] "Religious exercise" is defined by the statute as including "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. 2000cc-7(a). The courts are barred from inquiring "into whether a particular belief or practice is 'central' to a prisoner's religion." Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13 (2005). See also Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004) ("we are satisfied [that] the position we adopt today is faithful to both the text of the RLUIPA and Supreme Court precedent. Declining to inquire into whether a practice is central to an adherent's religion avoids the greater harm [...] of having courts presume to determine the place of a particular belief in a religion.").

Accordingly, summary judgment should be entered in favor of Defendants on Plaintiff's RLUIPA claim.

**III      CONCLUSION**

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss/motion for summary judgment [ECF No. 11] be granted.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:      July 20, 2011

cc:         The Honorable Sean J. McLaughlin
            United States District Judge